# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RHE'A RACHELLE BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:17CV867 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Rhe'a R. Brown brought this action to obtain review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits. The Court has before it the certified administrative record and cross-motions for judgment.

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits in August 2013. (Tr. 37, 267-77.) The application was denied initially and upon reconsideration. (*Id.* at 138-42, 150-67.) At the hearing, Plaintiff amended her alleged onset date to March 20, 2013. (Tr. 37.) After a hearing, the ALJ determined on May 25, 2016 that Plaintiff was not disabled under the Act. (*Id.* at 16-34.) The Appeals Council denied a request for review, making the ALJ's decision the final decision for purposes of review. (*Id.* at 1-6.) This appeal followed.

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court is not whether Plaintiff is disabled but whether the finding that she is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful work activity after her amended alleged disability onset date. (Tr. 21.) At steps two and three, respectively, the ALJ found that Plaintiff had severe impairments (MS, scoliosis, fibromyalgia, and anxiety disorder) that did not meet or equal any of the impairments listed in 20 C.F.R. Appendix 1, Subpart P. (Tr. 21-23.)

The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that she could perform a modified range of light work in that

> the claimant will require the option of alternating between sitting, standing, and walking every 40 minutes; cannot leave workstation unless on regularly scheduled breaks; can sit for a total of 6 hours in an 8-hour workday with interruptions and regularly scheduled

2

breaks; can stand and walk for a combined total of 6 hours in an 8-hour workday with interruptions and regularly scheduled breaks; is limited to occasional but not frequent use of the upper extremities to engage in overhead activities such as lifting, reaching , pulling and pushing bilaterally; is limited to occasional and frequent lifting and carrying no more than 10 pounds with upper extremities; is limited to occasional but not frequent crawling, climbing stairs and ramps, kneeling and bending; would need to avoid climbing ladders, ropes, and scaffolds; must avoid constant but not occasional exposure to extreme hot and cold temperatures, vibrations, wetness and work hazards such as working around dangerous, moving mechanical parts and un protected heights; must avoid jobs requiring binocular vision; is limited to moderate a noise work environment . . .

(*Id.* at 23.) Mentally, the ALJ found that Plaintiff could perform work within the following parameters:

limited to superficial interaction with the general public; is limited to occasional but not frequent working in teams, in tandem, and with co-workers; and is limited to low stressed occupations not requiring completion of a fixed number of production quotas and fast paced assembly line work.

(*Id.*) Although Plaintiff did not have any past relevant work to which this RFC could be compared at step four, the ALJ, relying on testimony from a vocational expert (VE), found at step five that Plaintiff could perform other work existing in the national economy. (*Id.* at 28.) Accordingly, the ALJ found that Plaintiff was not disabled. (*Id.* at 29-30.)

## IV. ISSUES AND ANALYSIS

Plaintiff raises three issues. First, Plaintiff argues that the ALJ failed to properly weigh the opinions of Dr. Markovic. (Docket Entry 12 at 5.) Second, Plaintiff argues that the ALJ's RFC is unsupported by substantial evidence. (*Id.* at 12.) Lastly, Plaintiff argues that the ALJ violated *Mascio v. Colvin* by failing to properly account for Plaintiff's fatigue in her RFC. *Id.* Neither objection has merit.

3

## I.    The ALJ's Credibility Determination is Supported by Substantial Evidence.

The treating source rule requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference.  The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion.  *See* 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii).  Moreover, as subsections (2) through (4) of the rule describe in detail, a treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record.  *See* 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4); SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996).  "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

Dr. Markovic filled out a check-box form in which he selected the following: Plaintiff has not been capable of performing sedentary work on a regular and continuing basis, Plaintiff has not been capable of performing sustained "light" work, and Plaintiff is unable to alternate sitting and standing throughout an 8-hour work day.  (Tr. 1419.)  In addition, Dr. Markovic selected the following limitations: a "severe" limitation to maintain attention and concentration for extended periods of time, a "severe" limitation to perform activities within a schedule, maintain regular attendance and be punctual, and a "severe" limitation to complete a normal workday and workweek without interruptions from medically-based symptoms and perform at a consistent pace.  (*Id.* at 1420.)

4

In the comments section of the form, Dr. Markovic stated the following:

> Patient continues to have difficulties with walking, leg pain, stiffness and sensory deficit on left-sided extremities. Patient also reports memory deficit and episodes of confusion and disorientation. Patient is off balance, walks limited distance with cane. Walking is aggravated also by pain from plantar fasciitis and tendinitis in both feet.

(Tr. 1421.)  In addressing and weighing Dr. Markovic's opinion, the ALJ stated that:

> To begin, there is no basis for concluding that the doctor has any expertise regarding the definition of disability under the Social Security Act or the Listing of impairments. Secondly, this checkbox form does not provide specific functional limitations as to the claimant's ability to sit, stand, walk, or lift. Thirdly, such a finding is contrary to the objective medical evidence show "mild" complaints with mostly intact daily activities. While the undersigned agrees that some limitations are supported, the undersigned finds very little support in the opinion proffered that the claimant is disabled. Further, the opinion notes that the claimant "reports memory deficit and episodes of confusion and disorientation [sic];" however, this statement appears to be based solely on the claimant's subjective reports, and it does not appear Dr. Markovic performed any psychological testing, screening tests, and memory measures to reach this conclusion. Further, Dr. Peat's psychological evaluations continually describe the claimant as oriented in all spheres with intact memory.

(Tr. 27.)

The ALJ's consideration of Dr. Markovic's lack of expertise in the definition of social security at best amounts to harmless error, because the ALJ gave several other valid reasons for giving Dr. Markovic's opinions partial weight.  First, the ALJ was correct in determining that Dr. Markovic's check-box assessment was conclusory and did not offer any specific conclusions about how much Plaintiff could sit, stand, walk, or carry.  Check-box or fill-in-the-blank forms are typically considered to be weak evidence.  *Mason v. Shalala*, 994 F.2d

5

1058, 1066 (3d Cir. 1993).  However, they may import greater significance when their content is supported by medical records.  *See Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014) ("[O]pinions expressed in check-box form [by the treating source] were based on significant experience with [the claimant] and supported by numerous records, and were therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit."); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (substantial evidence did not support ALJ's decision to reject treating physician's "check box" opinion where the opinion was supported by clinical evidence, including the physician's own treatment notes, and was not inconsistent with other evidence in the record); *Moore v. Astrue*, No. C 07–1218 PJH, 2008 WL 2811983, at *8 (N.D. Cal. July 21, 2008) (unpublished) (rejecting proposition that an ALJ may reject a physician's opinion simply because it is in checkbox form as such an explanation failed to provide an adequate reason for rejecting a physician's opinion). However, as further discussed below, Dr. Markovic's statements are not consistent with the objective medical evidence in the record.

Next, the ALJ correctly cited that Dr. Markovic's statements about Plaintiff's "memory deficits" and "confusion" were directly contradicted by assessments from Plaintiff's psychologist, Dr. Peat (Tr. 27, 1443, 1446, 1449, 1452) (treatment notes indicate intact memory, full attention, and normal thought process), as well as Dr. Peat's opinion that Plaintiff was only moderately limited in terms of concentration, persistence, or pace. (Tr. 1438.)

Next, the ALJ correctly stated that Dr. Markovic's statements were not supported by the objective medical evidence and Plaintiff's "mostly intact activities." Medical evidence

6

shows that Plaintiff described her pain as "10/10" or "very prominent" (Tr. 572), a walking

assessment indicated that Plaintiff's symptoms are "limiting her ability to safely participate

fully in-home leisure and exercise activities," (*Id.* at 615), and a walking assessment indicated

that Plaintiff was a fall risk with more than straight path walking. *Id.* In his opinion, the

ALJ acknowledged that Plaintiff had some limitations. However, those limitations do not

undermine the ALJ's reasonings. In April 2015, Plaintiff's symptoms eventually improved,

(Tr. 657, 659, 663, 665), and noted improvement in her pain after using a TENS device.[1]

(*See* Tr. 676) (reported pain of 8/10 pre-TENS to 0/10 post-TENS). Plaintiff's pain

returned when she stopped using the TENS device. (Tr. 691-92.) In July 2015, Plaintiff's

results were normal, except a Romberg[2] sign was positive with her eyes closed. (Tr. 704.)

On July 28, 2015, it was noted that Plaintiff's neuropathy was "improving with [the] TENS

unit" and "the TENS unit has allowed her to take less of the neuropathy medication which

has made her feel better." (Tr. 709-10.) By August 2015, Plaintiff achieved her short-term

goals in physical therapy and made significant progress in her long-term goals. (*See* Tr. 712)

(improved Dynamic Gait Index score and decreased fall risk). In addition, Plaintiff reported

---

[1] TENS therapy is a non-invasive and non-addictive way to treat fibromyalgia pain and fatigue. It delivers a current of about 60 milliamperes to muscles and nerve endings that are causing you particular pain. It causes these nerves to contract and relax, allowing for muscle stimulation and strengthening. It also reduces pain and restores mood. *Transcutaneous Electrical Nerve Stimulation (TENS)*, FIBROMYALGIA-SYMPTOMS.ORG, https://www.fibromyalgia-symptoms.org/fibromyalgia_electrotherapy.html (last visited November 21, 2018).

[2] The Romberg test is an appropriate tool to diagnose sensory ataxia, a gait disturbance caused by abnormal proprioception involving information about the location of the joints. It is also proven to be sensitive and accurate means of measuring the degree of disequilibrium caused by central vertigo, peripheral vertigo and head trauma. *Romberg Test*, PHYSIO-PEDIA.COM, https://www.physio-pedia.com/Romberg_Test (last visited November 21, 2018).

pain a "0/10" (Tr. 713) and stated that she walks for 30 minutes three times a week. *Id.* During her September 9, 2015 visit, Plaintiff reported walking every other day for 30 minutes, reported pain at "2/10" and indicated that she "uses the TENS unit as needed." (Tr. 721.) Records from a September 17, 2015 visit show that Plaintiff reported pain a "0/10" and that Plaintiff "ambulates without assistance." (*Id.* at 723.) Plaintiff also scored a 24/24 on the Dynamic Gait Index without any assistive devices. (Tr. 715.) Physical examinations in mid-November 2015 were relatively normal, with Plaintiff exhibiting full strength, normal sensation, and normal reflexes. (Tr. 748, 754.)

Beginning late November 2015, Plaintiff began to report both foot and back pain, and walked with an ataxic gait. (Tr. 761-62, 768-69.) However, it was reported that her strength was a 5/5 and her muscle tone was normal. *Id.* During a December 18, 2015 visit, treatment notes indicated that "no weakness is noted on muscle strength [but] slight guarding is noted" and there was "no change in neurologic status." (Tr. 769.) Treatment notes from a visit with Dr. Markovic on November 25, 2015 indicated that Plaintiff was "tolerating [Multiple Sclerosis] well and clinically stable" and had "unchanged imaging" in comparison to last year. (Tr. 1378.) Accordingly, the ALJ's credibility determination is supported by substantial evidence.

Lastly, Plaintiff's argument that the ALJ could not rely on the state agency experts is without merit. Plaintiff argues that the state agency expert "lacked adequate information to assess the case" and "admitted they could not make a full reasoned decision." (Docket Entry 12 at 4-5, 11; Tr. 117.) However, as the government correctly indicated, the state agency's determination was based on evidence of medical treatment prior to March 2013, the alleged

8

onset date. (*See* Tr. 117) (case analysis was from period of 7/29/2012-3/18/2013). The state agency experts had sufficient evidence to assess Plaintiff's functional limitations after March 2013. (Tr. 107-109.) In the end, the ALJ's decision to discount Dr. Markovic's opinion and give greater weight to other medical opinions (Tr. 27) is supported by substantial evidence.

## II.    The ALJ's RFC is Supported by Substantial Evidence.

A Plaintiff's RFC measures the most a claimant can do despite any physical and mental limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); 20 C.F.R. §§ 404.1545(a), 416.945(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. *See Hines*, 453 F.3d at 562-63; 20 C.F.R. §§ 404.1545(b)-(c), 416.945(b)-(c). The ALJ must then match the claimant's exertional abilities to an appropriate level of work. *See* 20 C.F.R. §§ 404.1567, 416.967. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. *See* 20 C.F.R. §§ 404.1569a(c), 416.969a(c). As for a function-by-function analysis, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may the RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

Plaintiff argues that the ALJ failed to properly discuss the mental and physical limitations of her RFC findings. More specifically, Plaintiff argues that the ALJ provided no analysis explaining why the claimant's objectively documented walking limitations should be ignored or could be fully accommodated by the 40-minute sit-stand option. (Docket Entry

9

12 at 12.)  Plaintiff's argument is without merit.  The ALJ's analysis of the record supports the RFC determination found here. The ALJ did take into account Plaintiff's limitations by including "provisions that exertional, postural, manipulative and environmental limitations" which also accommodated her foot pain, "although improved with use of a TENS unit."  (Tr. 26.)  More specifically, the ALJ provided restrictions limiting the amount of weight Plaintiff would need to lift and carry with her upper extremities (which necessarily would affect her balance) and environmental restrictions allowing her to avoid hazards. (Tr. 23.)  In addition, the ALJ correctly noted that Plaintiff's objective walking limitation did not reflect her permanent functioning.  (Docket Entry 15 at 16.)  As stated above, Plaintiff's condition improved drastically after physical therapy and use of a TENS unit.  (Tr. 676, 709-10.)  In the end, the ALJ's RFC determination is supported by substantial evidence.

## A. The ALJ Reasonably Considered Plaintiff's Alleged Fatigue Symptoms.

First, Plaintiff contends that the ALJ's RFC finding failed to account for her fatigue and moderate limitations in concentration, persistence, or pace ("CPP").  (Docket Entry 12 at 12-13.)  This objection lacks merit.  "[T]he process for assessing [the] RFC is set out in Social Security Ruling 96-8p."  *Monroe v. Colvin*, 826 F.3d 176, 187 (4th Cir. 2016) (citing *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015)). According to Social Security Ruling 96-8p, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis" including the functions listed in the regulations. SSR 96-8P, 1996 WL 374184, at *1.  "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work."  *Monroe*, 826 F.3d at 179 (internal quotations and citations omitted). The Fourth Circuit has also

10

addressed whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. *Mascio*, 780 F.3d at 636-37. In *Mascio* the Court stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested." *Id.* at 636. However, "remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* In addition, "[a]n ALJ may satisfy the function-by-function analysis requirement by referencing a properly conducted analysis of state agency consultants." *Herren v. Colvin*, No. 1:15-CV-00002-MOC, 2015 WL 5725903, at *5 (W.D.N.C. Sept. 30, 2015) (unpublished) (collecting cases).

The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why moderate difficulties in CPP did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*

In the instant matter, the ALJ reviewed all the medical evidence and properly determined that Plaintiff had moderate limitations in CPP due to Plaintiff's reports of low

11

mood, tearfulness, difficulty concentrating/making decisions, and difficulty sleeping. (Tr. 27 referencing 1431, 1442.) "Pursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015) (unpublished).

The Court here concludes that the ALJ adequately considered the entire record and properly determined that Plaintiff retained the RFC to perform light work with postural and environmental limitations. (Tr. 23-28.) The RFC assessment included findings that Plaintiff could perform tasks at least in terms of "two-hour intervals" and limited Plaintiff to low stress work without production quotas or fast-paced assembly-line work. (Tr. 23.) The ALJ also considered Dr. Markovic's statements that Plaintiff was unable to "sustain work on a regular and continuous basis," but gave it little weight and, as stated previously, properly explained his reasoning for why little weight was appropriate. (Tr. 27.) Furthermore, the ALJ considered Dr. Christine Peat's psychological assessment, where treatment notes indicated that Plaintiff reported low mood, tearfulness, difficulty concentrating/making decisions, and difficulty sleeping. (Tr. 22 referencing 1431, 1442.) However, the ALJ also noted "while Dr. Peat's treatment notes show some dysthymia and decreased range of affect, the claimant's thought processes and content, orientation, attention and memory were all within normal limits." (Tr. 27.) Additionally, the ALJ gave "great weight" to the state agency consultants, who indicated that Plaintiff could perform light work with postural and environmental limitations. (Tr. 27 referencing 96-97, 110-11, 120-21, 134.) Lastly, the ALJ considered Plaintiff's fatigue-related

complaints, such as her need to take frequent breaks, her difficulty in completing household chores, her difficulty standing for long periods, (Tr. 24), and her reports of fatigue when seeking treatment. (Tr. 26.)

In addressing Plaintiff's fatigue, the ALJ states the following:

> While the claimant reported problems with fatigue, neuropathy, and ambulation, the record shows that she uses a cane for balance, and that a TENS unit has been beneficial for neuropathy. In fact, the most recent records described the claimant's complaints as "mild," which contrasts with the current claimant of disabling symptoms. However, some complaints of difficulty walking, standing, sitting, and lifting are reasonable in light of the claimant's diagnoses, **and the above RFC includes provisions for exertional, postural, manipulative, and environmental limitations.** These limitations also accommodate her complaints of foot pain, although improved with use of a TENS unit.

(Tr. 27 referencing 676, 709-10, 721.) (emphasis added). The ALJ properly recited and analyzed such evidence and explained his reasoning along the way, providing the Court with a logical bridge connecting the RFC to the evidence considered. *See e.g.*, *Hubbard v. Berryhill*, No. 3:17-CV-677, 2018 WL 3744017, at *5–6 (W.D.N.C. Aug. 7, 2018). In sum, substantial evidence supports the ALJ's RFC determination.

# V. CONCLUSION

For the reasons stated herein, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) be **DENIED**, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be **GRANTED**, and that the final decision of the Commissioner be upheld.

Joe L. Webster
United States Magistrate Judge

November 29, 2018
Durham, North Carolina

14